<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
CHRISTOPHER HAMPTON,              :
                                  :
            Plaintiff,            :
                                  : Civ. Action No.: 3:14-cv-6982-BRM-TJB
      v.                          :
                                  :
PROTECTION PLUS SECURITY          :        OPINION
CORPORATION, *et al.*,            :
                                  :
            Defendants.           :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Christopher Hampton's ("Plaintiff") motion for default judgment (ECF No. 19) as to defendants Kevin S. Haran ("Haran") and Protection Plus Security Corporation ("Protection Plus"). A proof hearing was held on December 1, 2016. (ECF No. 33.) Based on the papers submitted by counsel and the testimony of Plaintiff at the proof hearing, for the reasons discussed below, Plaintiff's motion for default judgment is **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

**A. Procedural History**

On November 6, 2014, Plaintiff filed a complaint against Haran, Protection Plus, Universal Protection Services, and Universal Services of America for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New Jersey Law Against Discrimination ("NJLAD"), and the Fair Labor Standards Act ("FLSA"). (ECF No. 1.), Plaintiff caused Defendants to be served with the summons and complaint n November 14, 2014 and filed Affidavits of Service confirming same. (ECF Nos. 7, 15-1.) Universal Protection Services and Universal Services of America settled

with Plaintiff and were dismissed from the case. (ECF No. 30.)

On March 15, 2016, Plaintiff requested an entry of default against Protection Plus and Haran for failure to plead or otherwise defend (ECF No. 15), which was entered by the Clerk on March 16, 2016 (ECF No. 17). Plaintiff subsequently filed this Motion for Default Judgment (ECF No. 19), and on December 1, 2016, the Court held a proof hearing regarding Plaintiff's motion.[1]

**B. Factual History**

Protection Plus and Haran have not appeared in this case. Therefore, the following facts are derived from the Complaint and Plaintiff's testimony at the proof hearing. The Court finds Plaintiff's testimony credible; he answered the Court's questions truthfully and completely, and his answers were not scripted.

Protection Plus hired Plaintiff, an African American male, as a security officer in July 2012. (ECF No. 1; Trial Transcript dated December 1, 2016 at 6:19-25 (ECF No. 35).) Specifically, Plaintiff was hired by Haran to work at Protection Plus and was supervised by Tom Geron ("Geron"), both Caucasian males. (ECF. No. 35 at 7:7-8, 11-18.)

Plaintiff worked as a security officer for his entire term of employment with Defendant Protection Plus. (ECF No. 35 at 7:1-3.) As a security officer, Plaintiff was required "to maintain a safe perimeter, make sure the doors were locked," and "maintain a safe environment for the visitors to have visits with the clients." (ECF No. 35 at 7:19-23.) Plaintiff typically worked a forty (40) hour week, consisting of eight (8) hour shifts and sometimes twelve (12) hour shifts. (ECF No. 35 at 7:24-8:1, 15:11-12.) Plaintiff earned $13.48 per hour while working for Protection Plus, plus an additional $3.71 per hour that was designated for a 401K plan. (ECF No. 35 at 14:21-23 and Ex. P-2.) Protection Plus assured Plaintiff that it would match his 401K contribution. (ECF No. 35 at

---

[1] At the Court's request, Plaintiff submitted post-hearing briefing. (ECF No. 36.)

15:9-10.) Plaintiff contends he was not paid for working on November 3, 2012 and was not paid any additional compensation for working overtime on November 11, 2012. (ECF No. 35 at 18:2-19:3 and Exs. P-2, P-3.)

Plaintiff alleges Protection Plus failed to discipline its Caucausian employees while its African American employees were reprimanded, resulting in Plaintiff's termination. For example, Plaintiff testified he arrived at 12:01 for a shift that started at 12:00 and was immediately reprimanded by Geron, while Caucasian officers continued to arrive without reproach. (ECF No. 35 at 11:20-12:7.) Plaintiff testified these Caucasian officers came in late on a regular basis without consequence. (ECF No. 35 at 12:1-10.)[2]

Plaintiff further testified a Caucasian male co-worker was not reprimanded after a visitor reported being harassed and feeling threatened by him. (ECF No. 35 at 13:11-25, 14:7-8.) The visitor complained to Geron, but the worker was not reprimanded or fired and even stated, "Oh, I could have had that girl if I really wanted to." (ECF No. 35 at 13:24-14:5.)

In contrast to Protection Plus and Haran's treatment of Caucasian employees, Plaintiff was terminated on November 24, 2012 after Haran accused Plaintiff of making "a conscious decision to disregard . . . instructions and the rights of others when you advised a female visitor to the Ancora Hospital that you would punch her in the face if she were a man." (ECF No. 35 at 8:9-19, 9:4-10 and Ex. P-1.) Plaintiff denies he ever said this to the visitor, but concedes making the statement to a co-worker while the visitor was inside and enclosed in an elevator, visible to Plaintiff from the security camera. (ECF No. 35 at 9:11-10:5.) Plaintiff believes Protection Plus and Haran

---

[2] Plaintiff also testified a Caucasian female co-worker repeatedly violated the traffic laws while operating the company vehicle and received multiple traffic tickets from the State of New Jersey without penalty from Protection Plus. (ECF No. 35 at 11:4-6, 12:11-13:10.) However, Plaintiff did not testify whether he, or any other African American employees, was reprimanded for any similar conduct.

fired him due to his race, since the visitor did not hear him and no visitor could have complained. (ECF No. 35 at 11:14-17.) There were "multiple instances where white officers were allowed to do things, and black officers were just basically given the shortest rope possible." *Id.*

Since Plaintiff's termination, he has earned under $10,000 per year, has applied to multiple jobs, and had a few interviews. (ECF No. 35 at 16:7-10, 20:6-11.) Plaintiff alleges he has difficulty applying for jobs, as well as in his daily life, because he feels Caucasian people look at him differently. (ECF No. 35 at 16:20-23.) He perceives people are "always looking at me like I have something to get over on them . . . and in reality, all I want is just a job, and I'm just a normal, very nice person." (ECF No. 35 at 16:24-17:4.)

## II. LEGAL STANDARD

A default judgment may be entered "against a properly served defendant who fails to file a timely responsive pleading." *Louisiana Counseling & Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. Pro. 55(b)(2); *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n. 9 (3d Cir.1990)). The judgment must be entered by the court, rather than the clerk, where the amount is not sum certain or cannot be made certain by computation. Fed. R. Civ. P. 55(b).

Entry of default judgment is within the discretion of the district court, although cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *see Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364. To determine the appropriateness of the entry of a default judgment, the Court may conduct a hearing when, "to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b).

Generally, courts treat all pleadings and allegations of the plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). However, the Court is not required to accept Plaintiff's conclusions of law and, therefore, "it remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action" against Defendants. *Directv, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A *Federal Practice and Procedure* § 2688, at 58-59, 63 (3d ed. 1998)); *accord Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364; *Comcast Cable Commc'ns v. Bowers*, No. CIV 06-1664 RBK, 2007 WL 1557510, at *2 (D.N.J. May 25, 2007).

### III. DECISION

#### A. Liability

Having heard Plaintiff's testimony and finding it to be credible, the Court accepts Plaintiff's allegations as true. Based on these facts, the Court reviews Plaintiff's Complaint to confirm Plaintiff has sufficiently pled and proven each cause of action.

##### 1. Title VII

Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e–2(a).

Plaintiff has demonstrated that Protection Plus discriminated against him based on his race when they reprimanded and terminated him for conduct in which fellow Caucasian co-workers engaged without consequence. However, as to Haran, Plaintiff has not established liability. The

statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." *Id.* at § 2000e(b). The Third Circuit does not interpret this to hold individuals liable. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996); *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 311 (D.N.J. 2005). Thus, Plaintiff has demonstrated Protection Plus,[3] but not Haran, is liable under Title VII for discriminating against him because of his race.

### 2. NJLAD

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1. The elements of an NJLAD claim vary based on the cause of action alleged. *Victor v. State*, 203 N.J. 383, 408, 4 A.3d 126, 141 (2010) (listing the different *prima facie* elements for various NJLAD causes of action based on failure to hire, discriminatory discharge, retaliation, and hostile environment).

In his Complaint, Plaintiff alleges:

> Defendant has discriminated against Plaintiff on the basis of his race, color and sex in violation of the [NJLAD] by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory work environment that included, among other things, disparate treatment of Plaintiff because of this race.

(ECF No. 1 at ¶ 22.) Thus, it appears Plaintiff is alleging the existence of a hostile environment.

---

[3] Plaintiff did not provide the Court with evidence he exhausted administrative remedies, to the extent they may be available. "[W]hen Title VII remedies are available, they must be exhausted before a plaintiff may file suit." *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) (quoting *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995)). However, exhaustion of these remedies is an affirmative defense, requiring the defendant to plead the defense. *See id.* Accordingly, Plaintiff has met his burden of demonstrating Protection Plus's liability until Protection Plus appears and claims otherwise.

To set forth a cause of action for hostile environment under the NJLAD, Plaintiff must show: "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." *Victor*, 203 N.J. at 409; *see also Jackson v. Gannett Co.*, No. Civ. A. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011). Once Plaintiff meets his burden, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason" for the discrimination. *Sunkett v. Misci*, 183 F. Supp. 2d 691, 717 (D.N.J. 2002).

Plaintiff is African-American and, accepting his allegations true, was subject to a hostile work environment as a result of his race that altered the conditions of his employment. Protection Plus and Haran, by failing to appear, have not demonstrated to this Court any legitimate, non-retaliatory reason for their conduct. Therefore, Plaintiff has a legitimate claim against Protection Plus and Haran[4] under the NJLAD.

### 3. FLSA

29 U.S.C. § 216(b) provides a private right of action to recover for violations of the FLSA, specifically failure to pay the minimum wage prescribed under 29 U.S.C. § 206 and overtime rates prescribed under 29 U.S.C. § 207. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 253 (3d Cir. 2012). Plaintiff alleged he worked but was not paid in full for November 3 and 11, 2012, and provided paystubs supporting same. Therefore, Protection Plus and Haran failed to pay Plaintiff pursuant to the FLSA.

## B. Damages

---

[4] Unlike Title VII, an individual supervisor may be found liable under the NJLAD where they aided or abetted the discriminatory action. N.J.S.A. 10:5-12e; *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999); *Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004). Haran, having supervised Plaintiff and having been actively involved in Plaintiff's punishment and termination, knowingly aided in the discriminatory actions against Plaintiff.

Plaintiff seeks back pay, compensatory damages, and punitive damages under Title VII and NJLAD, as well as damages under the FLSA.

**<u>1. Back Pay</u>**

Plaintiff is entitled to back pay under Title VII and the NJLAD. *Loeffler v. Frank*, 486 U.S. 549, 558 (1988); 42 U.S.C. §2000e-5(g)(1); *see also Goodman v. London Metals Exchange*, 86 N.J. 19, 34 (1981) (back pay is an available remedy under NJLAD). "The appropriate standard for measuring a back pay award under Title VII is . . . to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." Third Circuit Model Jury Instructions, §5.4.3 Comment (quoting *Gunby v. Pennsylvania Elec. Co.*, 840 F. 2d 1108, 1119-1120 (3rd Cir. 1988)). "Although the statutory duty to mitigate damages is placed on a Title VII plaintiff, the employer has the burden of proving a failure to mitigate." (*Id.* (quoting *Anastasio v. Schering Corp.*, 838 F.2d 701, 707-08 (3rd Cir. 1988)); *see also Goodman v. London Metals Exchange*, 86 N.J. 19, 40 (1981) (holding that mitigation is an affirmative defense in an action under NJLAD and the burden rests with the employer). Employers can meet the burden of proving a failure to mitigate in one of two (2) ways: 1) that the employer offered a job "that was substantially equivalent to his position" with the employer or 2) "that other substantially equivalent positions were available to [the former employee] and he failed to use reasonable diligence in attempting to secure such a position." *Anastasio*, 838 F.2d at 708.

Based on Plaintiff's testimony, the Court finds Plaintiff would have earned $43,472.00[5] per year, inclusive of his employer's 401K contribution. (ECF No. 35 at 14:21-15:10.) He concedes he earned about $10,000 per year since he was fired. (ECF No. 35 at 16:7-10.) Therefore, Plaintiff's

---

[5] 40 hours per week * 52 weeks per year * $20.90 ($13.48 [hourly rate] + $3.71 [individual 401k contribution] + $3.71 [employer 401k contribution])

lost wages and 401K contribution are $33,472.00 per year for four (4) years, which totals $133,888.00.[6]

Accordingly, Protection Plus (under Title VII and the NJLAD) and Haran (under the NJLAD) are jointly and severally liable to Plaintiff for $133,888.00.

**2. Compensatory Damages**

Plaintiff is also entitled to compensatory damages. 42 U.S.C. § 1981a(b)(3); *see Hurley v. Atlantic City Police Dep't*, 933 F. Supp. 3d 396, 424 (D.N.J. 1996) (permitting, but limiting, compensatory damages under the NJLAD); *Gimello v. Agency Rent-A-Car Systems, Inc.*, 250 N.J. Super. 338, 366 (App. Div. 1991) (granting $10,000 in damages for pain, suffering, and humiliation under NJLAD). Compensatory damages include damages for emotional distress and humiliation suffered. 42 U.S.C. § 1981a(b)(3). "Neither medical evidence nor corroborating testimony" is needed to prove emotional distress. *Sowell v. RAV Investigative Services*, 2016 U.S. Dist. LEXIS 69293 at *17 (E.D. Pa. 2016). Title VII plaintiffs may recover emotional distress damages with only their own testimony. *See id.*; *Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1245 (3rd Cir. 1983); *Rios v. Mary Loves 1*, No. CV 13-CV-1619, 2015 WL 5161314, at *52 (E.D. Pa. Sept. 2, 2015); *see also Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1289 (11th Cir. 2008) (upholding verdict of $27,160.59 for mental anguish without any expert opinion offered); *Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1273 (8th Cir. 1981) (holding that the plaintiff had testified to sufficient facts for a jury to award emotional distress damages and remanded for a determination of emotional distress damages); *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 236 (8th Cir. 1976) (remanding to determine emotional distress damages because plaintiff's statement that "I just felt I was embarrassed that it [discrimination] was really happening and I see it's really

---

[6] 4 years * ($43,472.00 [annual wages] - $10,000 [approximate annual income])

a true thing and I was really hurt and humiliated me (sic) because I'm black; that stopped me from moving where I want to move" was sufficient to establish the basis for emotional distress damages). Plaintiff is entitled to an award of emotional distress damages in a default judgment. *Thompson v. Central Security Agency, Inc.*, 1999 U.S. Dist. LEXIS 2590, *7 (E.D. Pa. 1999) (granting $10,000 for emotional distress because the plaintiff had testified that defendant's conduct made her feel scared, embarrassed, depressed, and caused substance abuse).

As a result of Protection Plus and Haran's discriminatory conduct, Plaintiff has and continues to suffer anxiety, depression, and fear about how future employers will treat him. (ECF No. 35 at 16:20-17:4.) Therefore, the Court grants Plaintiff an award of emotional distress damages in the amount of $10,000.00 for which Protection Plus and Haran are jointly and severally liable. *See Hurley*, 933 F. Supp. 3d at 420-21.

### 3. Punitive Damages

Punitive damages are available under Title VII only "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference." 42 U.S.C. § 1981a(b)(1); *see Santiago v. City of Vineland,* 107 F. Supp. 2d 512, 569 (D.N.J. 2000) (requiring similar standard for punitive damages award under the NJLAD). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kant v. Seton Hall University*, Nos. 06–4448, 06–4464, 2008 WL 2212006, at *5 (3d Cir. 2008) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).

Even taking Plaintiff's allegations as true, there is insufficient evidence before the Court to show Protection Plus or Haran had a malicious or reckless state of mind as to the violation of federal law. *See Rios*, No. CV 13-CV-1619, 2015 WL 5161314, at *17 (E.D. Pa. Sept. 2, 2015)

(denying punitive damages because no evidence of defendant's state of mind, explaining that proof of defendant's knowledge of the violation is required); *see also Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 317 (D.N.J. 2005) ("The evidence could not reasonably support a finding that [defendant] acted with a high degree of conscious disregard for the rights of others or engaged in 'particularly egregious' misconduct. . . . [Plaintiff's allegations [stating otherwise] are unsupported and inadmissible hearsay and punitive damages are therefore inappropriate under the applicable heightened standard.") Plaintiff has not provided any comparable cases from this Circuit to persuade the Court otherwise. Accordingly, Plaintiff's claim for punitive damages is **DENIED.**

### 4. FLSA Damages

The FLSA requires employers to pay their employees a minimum wage of $7.25. 29 U.S.C. § 206(a)(1). Further, as to overtime, "no employer shall employ any . . . employees . . . for a workweek longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The FLSA also provides for liquidated damages:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b); *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991); *Brusstar v. South Eastern Pennsylvania Transit Authority*, 1988 WL 85657, at *6 (E.D. Pa. Aug. 17, 1988). "Liquidated damages," as defined by the FLSA, are equal to double the total amount of unpaid time calculated payment. *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).

To avoid or limit the damages under the FLSA, once a violation has been established, a

Defendant must demonstrate that it acted in an objectively reasonable manner and subjectively had an honest intention to follow the mandates of the FLSA. *Id.*; *Brusstar*, 1988 WL 85657, at *6. Consequently, "double damages are the norm, single damages the exception." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991). Indeed, "[i]f the employer fails to carry its burden of demonstrating good faith and reasonable grounds, the award of liquidated damages is mandatory." *Martin*, 949 F.2d at 1299.

Plaintiff was not paid for working on November 3, 2012, a day on which he worked eight (8) hours. (ECF No. 35 at 18:7-12; P-2.) Pursuant to the FLSA, he is entitled to damages "in the amount of [his] unpaid *minimum* wages." 29 U.S.C. § 216(b) (emphasis added). Therefore, Plaintiff is awarded $58.00[7] for November 3, exclusive of liquidated damages.

In contrast, the Court may look at Plaintiff's regular rate to calculate his overtime. Plaintiff's hourly wage, exclusive of 401k contributions, was $13.48. On November 11, 2012, a holiday on which Protection Plus and Haran should have provided pay for time and a half (ECF No. 35 at 18:25-19:1), Plaintiff was not paid his additional half-time (ECF No. 35 at 18:25-19:3). Therefore, Plaintiff is entitled to his additional half-time pay of $53.92,[8] exclusive of liquidated damages, for working on a holiday on November 11, 2012.

Plaintiff is entitled to liquidated damages for his unpaid wages since Protection Plus and Haran, by failing to appear, have not demonstrated to this Court that they acted in an objectively reasonable manner. Therefore, Plaintiff's total unpaid wages under the FLSA total $111.92.[9] Plaintiff is entitled to liquidated damages which totals $223.84.[10] Protection Plus and Haran are jointly and severally liable. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir.

---

[7] $7.25 [minimum wage] * 8 [hours worked]
[8] ($13.48 [regular hourly rate] * 8 [hours worked]) / 2 [half time]
[9] $58.00 [November 3] +$53.92 [November 11]
[10] $111.92 [unpaid wages] * 2 [liquidated damages]

2014).

**IV. CONCLUSION**

Plaintiff is awarded back pay in the amount of $133,888.00; compensatory damages in the amount of $10,000.00; and FLSA damages in the amount of $223.84. Plaintiff is awarded, in sum, $144,111.84. An appropriate judgment will follow.


Date: February 23, 2017

                                         */s/ Brian R. Martinotti*
                                         **HON. BRIAN R. MARTINOTTI**
                                         **UNITED STATES DISTRICT JUDGE**